IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 7 |
| WILLIAM J. and DENISE M. STOUT, | : |
| DEBTORS. | : BANKRUPTCY NO. 07-14899 SR |
| DENISE M. STOUT, | : |
| PLAINTIFF, | : |
| VS. | : |
| AURORA LOAN SERVICES AND LEHMAN BROTHERS BANK, | : |
| DEFENDANTS. | : ADV. NO. 09-00011 SR |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**Introduction**

The debtors, William J. and Denise M. Stout (collectively referred to as the "Debtors"), received a Chapter 7 discharge in December of 2007. In late January of 2008, their bankruptcy case was closed. Less than six months later, Denise M. Stout ("Plaintiff") commenced an action against defendants, Aurora Loan Services ("Aurora"), and Lehman Brothers Bank (Aurora and Lehman Brothers Bank are collectively referred to as "Defendants"), in the district court for violating the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* The district court concluded that Plaintiff's action should proceed in the bankruptcy court and, consequently, granted the Plaintiff leave to file a motion to reopen the Debtors' bankruptcy case so her action

could proceed therein. After Debtor's bankruptcy case was re-opened, Plaintiff commenced this adversary proceeding. In her complaint ("Complaint"), Plaintiff asserts that the Defendants violated TILA and that she is entitled to rescind her mortgage loan and recover an award of damages, fees and costs.

Aurora moves to dismiss the Complaint contending that Plaintiff's action is barred as a matter of law. It contends that Plaintiff is barred by the doctrine of judicial estoppel from pursuing her action because Debtors failed to disclose Plaintiff's TILA claim in their Chapter 7 bankruptcy case.

A hearing on Aurora's motion was held. At the hearing, the parties presented oral argument but no evidence was introduced. At the close of the hearing, the Court took the matter under advisement. Upon consideration, Aurora's motion shall be denied without prejudice.

**Background**

On August 8, 2007, Debtors filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code. On their "Chapter 7 Individual Debtor's Statement of Intent," Debtors indicated that they intended to retain their home and continue making their regular mortgage payments to Aurora. *See* Docket Entry No. 1, Chapter 7 Individual Debtor's Statement of Intention. On Schedule B, Debtors stated that they had no "contingent and unliquidated claims of [any] nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Docket Entry No. 1, Schedule B. Following the meeting of creditors on October 17, 2007, the Chapter 7 Trustee filed a report of no distribution, stating that "there are no assets to administer for the benefit of creditors of this estate." Docket Entry dated 10/17/2007.

On November 8, 2007, Aurora filed a motion for relief from the stay ("Motion for

Relief") which was granted on November 28, 2007.  *See* Docket Entry Nos. 14 & 19.  In the Motion for Relief, Aurora alleged that Debtors were "in default of [their] mortgage from August 1, 2007[.]"  See Motion of Aurora Loan Services, LLC., as Servicer for the Mortgagee of Record for Relief from Automatic Stay Under §362 Pursuant to Bankruptcy Procedure Rule 4001 at ¶ 6.  Based on this allegation, Debtors were either current on their mortgage or only one month in arrears (meaning they had missed their August payment) when they commenced their bankruptcy case.

On December 18, 2007, the Debtors were granted a discharge under 11 U.S.C. §727.  Their bankruptcy case was closed on January 31, 2008.

On February 29, 2008, Defendants filed an action for mortgage foreclosure in the state court.  *See* Amended Motion to Dismiss Complaint Seeking Damages in Core Adversary Proceeding ("Amended Motion") ¶14; Plaintiff/Debtor's Response to Amended Motion to Dismiss Filed by Defendant Aurora Loan Services, LLC ("Plaintiff's Response") ¶14.

On July 3, 2008, Plaintiff commenced her action for rescission in the United States District Court in the Eastern District of Pennsylvania.  *See* Amended Motion ¶15; Plaintiff's Response ¶15.  *See also Stout v. Aurora Loan Service and Lehman Brothers Bank, Civil Action No. 2:08-cv-3194*.  Thereafter, Defendants filed a motion to dismiss.  However, rather than ruling on the motion, the District Court concluded that "Plaintiff's claims ... would be best resolved in the context of Plaintiff's recent bankruptcy action in order to ensure fairness to all of Plaintiff's creditors" and directed Plaintiff to file a motion to reopen Debtors' bankruptcy case.  *See* District Court Docket, Civil Case No. 2:08-cv-3194, Entry No. 8 (District Court Order, dated Nov. 13, 2008).

Plaintiff complied with the District Court's Order and filed a motion to re-open the

3

bankruptcy case. Following a hearing on the motion on January 8, 2009,[1] this Court granted Plaintiff's request. Plaintiff subsequently filed this adversary proceeding seeking rescission of her mortgage loan and recovery of damages (both statutory and actual) under TILA.[2] In her Complaint, Plaintiff alleges that: (i) the finance charge that was disclosed at the closing on her mortgage loan was $5,476.98 whereas it should have been $5,756.11; and (ii) based on 15 U.S.C. §1635(i), the difference between these two amounts, namely $279.13, is above the tolerance level which applies after a foreclosure proceeding has been instituted.

Aurora contends that Plaintiff's Complaint should be dismissed as a matter of law based on the doctrine of judicial estoppel because Debtors willfully and consciously failed to disclose Plaintiff's contemplated TILA claim in their bankruptcy schedules and to the Chapter 7 Trustee at the meeting of creditors. *See Amended Motion* ¶¶ 18, 20-21. Plaintiff opposes the motion to dismiss, arguing that when Debtors filed their bankruptcy case, she could not have known of her TILA claim because it did not yet exist. *See* Plaintiff's Response ¶18. Plaintiff points out that she filed her TILA action under 15 U.S.C. §1635(i) and that, based on the plain language of that provision, her action did not arise until after Defendants filed their foreclosure complaint in state

---

[1] During the hearing on Aurora's motion to dismiss, Aurora's counsel asserted that, at the hearing on Plaintiff's motion to re-open the bankruptcy case on January 8, 2009, Plaintiff's counsel "indicated that the debtors were aware of the possible rescission claim" but chose not to disclose it in their Schedules, to the Chapter 7 Trustee or to the Court "so as not to affect the exemptions." Transcript, March 12, 2009, at 4. However, the January 8th hearing transcript does not support this assertion. To the contrary, the transcript reveals that Plaintiff's counsel said at the January 8th hearing that Plaintiff's position is that "her lawsuit wasn't triggered" until the foreclosure action was filed in state court because her lawsuit is based on §1635(i) of TILA which "says that the tolerances for the APR go down after the initiation of foreclosure." Transcript, January 8, 2009, at 8. In even more concise language, Plaintiff's counsel stated that Plaintiff's lawsuit against the Defendants "didn't exist at the time [Debtors] were in bankruptcy." Id.

[2] Except for the allegations regarding jurisdiction and venue, the Complaint which Plaintiff filed in the instant adversary proceeding is almost identical to the complaint which she filed in the District Court action.

4

court. *See id.* ¶¶18, 20-23.

**Discussion**

### I. Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may consider the allegations contained in the pleading, exhibits attached thereto and matters of public record. *Pension Benefit Guaranty Corporation v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The court must accept the factual allegations in the pleading as true, *Erickson v. Pardus*, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007), and view all reasonable factual inferences in the light most favorable to the non-moving party, *Angelastro v. Purdential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nevertheless, "dismissal is warranted if the allegations"of a pleading "are not 'enough to raise a right to relief above the speculative level ... on the assumption that all [of] the allegations in the [pleadings] are true (even if doubtful in fact).'" *Access Insurance Holdings, Inc. v. Lincoln General Insurance Company*, 2008 WL 859222, at *1 (E.D. Pa. March 28, 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted)).

### II. Judicial Estoppel

The doctrine of judicial estoppel is used to prevent parties from "asserting inconsistent claims in different legal proceedings." *Mintze v. American General Financial Services, Inc.*, 434 F.3d 222, 232 (3d Cir. 2006). The decision of whether to apply the doctrine is within a court's discretion. *Id.* The doctrine is not "intended to eliminate any slight or inadvertent

5

inconsistency in a litigant's position; instead[,] it is to be reserved for only the most egregious cases to prevent a party from deliberately 'playing fast and loose with the courts.'" *Ortlieb v. Hudson Bank,* 312 F. Supp.2d 705, 710 (E.D. Pa. 2004) (*quoting Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 319 (3d Cir. 2003) (*quoting Scarano v. Cent. R.R. Co. of New Jersey,* 203 F.2d 510, 513 (3d Cir. 1953))). *See also Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 362 (3d Cir. 1996) (*quoting Scarano v. Cent. R.R. of New Jersey,* 203 F.2d at 513) (Asserting inconsistent positions does not trigger the application of judicial estoppel unless "intentional self-contradiction is ... used as a means of obtaining unfair advantage."). Courts have utilized the doctrine to bar claims brought by litigants who, in bad faith, failed to disclose those claims during their prior bankruptcy cases. *See Ortlieb,* 312 F. Supp.2d at 710. In determining whether to apply judicial estoppel, courts consider the following factors: "(1) whether the party to be estopped has taken two positions that are 'irreconcilably inconsistent'; (2) whether the change of position was in 'bad faith' or was coupled with the intent of playing 'fast and loose' with the court; and (3) whether application of the doctrine is 'tailored to address the harm identified' and 'no lesser sanction would adequately remedy the damage done by the litigant's misconduct.'" *Id.* at 711.

**Whether Plaintiff's Two Positions are "Irreconcilably Inconsistent"?**

Plaintiff asserts that she did not disclose her TILA claim during the Debtors' bankruptcy case because it did not exist at that time. In furtherance of this position, she argues that she filed her TILA action under 15 U.S.C. §1635(i) which states in plain language that it "is not triggered until 'after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling.'" *See Plaintiff's Response ¶18.*

*Background of TILA*

As the Third Circuit Court of Appeals recently observed, TILA was enacted to regulate

6

"the relationship between lenders and consumers, including mortgagees and mortgagors, by requiring certain disclosures regarding loan terms and arrangements." *McCutcheon v. America's Servicing Company*, ___ F.3d ___, ___, 2009 WL 723601, at *3 (3d Cir. March 20, 2009). One of the requirements imposed upon lenders under TILA is an obligation to disclose the applicable "finance charge" for mortgage loans. The term "finance charge," for purposes of TILA, is "the sum of all charges ... imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §1605(a). Such charges include but are not limited to the following: interest; any amount payable under a point, discount or other system of additional charges; service or carrying charges; loan fees; finder's fees; credit report fees, etc. 15 U.S.C. §1605. When a lender fails to accurately disclose the finance charge, it has violated TILA. However, the amount disclosed as a finance charge is considered accurate despite the fact that it varies from the actual finance charge if it fits within certain tolerance ranges.

The tolerance range for rescinding a mortgage loan is smaller after a foreclosure action has been commenced against the mortgagee's primary residence. *See Sterten v. Option One Mortgage Corporation,* 546 F.3d 278, 286 (3d Cir. 2008). Prior to the commencement of a foreclosure action, the tolerance level range is one-half of one percent or one percent of the total amount of credit extended. *See id.; see also* 15 U.S.C. § 1605(f)(2).[3] After the

---

[3] Before a foreclosure action is commenced, the tolerance level for rescission is governed by 15 U.S.C. § 1605(f)(2) which states:

> (f) Tolerances for accuracy
>
> In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge--
>
> (1) shall be treated as being accurate for purposes of this
>
> (continued...)

7

commencement of a foreclosure action, the range "shrinks to $35." *Sterten,* 546 F.3d at 286. *See also* 15 § 1635(i)(2).[4]

---

[3](...continued)
subchapter if the amount disclosed as the finance charge--

(A) does not vary from the actual finance charge by more than $100; or

(B) is greater than the amount required to be disclosed under this subchapter; and

(2) shall be treated as being accurate for purposes of section 1635 of this title if--

(A) except as provided in subparagraph (B), the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended; or

(B) in the case of a transaction, other than a mortgage referred to in section 1602(aa) of this title, which--

(i) is a refinancing of the principal balance then due and any accrued and unpaid finance charges of a residential mortgage transaction as defined in section 1602(w) of this title, or is any subsequent refinancing of such a transaction; and

(ii) does not provide any new consolidation or new advance;

if the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one percent of the total amount of credit extended.

15 U.S.C. § 1605(f)(2).

[4] After a foreclosure action has been filed, the tolerance level is set by §1635(i)(2) which states, in relevant part:

[F]or the purposes of exercising any rescission rights after the

(continued...)

8

*Application of TILA provisions to Plaintiff's Argument*

Plaintiff is correct that the tolerance level set forth in §1635(i) is not triggered until a foreclosure proceeding has been instituted. However, that assertion, in and of itself, does not establish that Plaintiff's claim for rescission arose only after Defendants filed their foreclosure action in state court. According to Plaintiff's Complaint, the finance charge disclosed at the closing on her mortgage loan was $279.13 less than it should have been. If the aforementioned amount falls within the tolerance range set forth in §1605(f)(2), then Plaintiff's claim for rescission existed when Debtors filed their bankruptcy case.[5] However, at this juncture of this adversary proceeding, this Court cannot determine whether $279.13 is within the tolerance range of §1605(f)(2) because the Complaint does not contain the information needed to make this determination. For example, the Complaint does not reveal the "total amount of credit extended" and whether it is the Debtor's original mortgage or a refinancing thereof.

---

[4](...continued)
> initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this subchapter.

15 U.S.C. § 1635(i)(2)

[5] If Plaintiff's claim for rescission existed when Debtors filed their bankruptcy case, then Plaintiff may not have standing to pursue this cause of action. *See Saellam v. Norfolk Southern Corporation*, 2007 WL 1653737 (W.D. Pa. June 6, 2007) (concluding that plaintiff, who filed lawsuit for employment discrimination after his bankruptcy case was closed, was not the real party in interest in the lawsuit and that only the Chapter 7 Trustee had standing to pursue the lawsuit since the claim for employment discrimination existed at the time the plaintiff filed for bankruptcy, the plaintiff had failed to list it on his Schedules and there was no indication that the Chapter 7 Trustee had ever abandoned the claim).

However, Aurora argues that even if Plaintiff's TILA claim did not exist when Debtors' bankruptcy case was filed, when Aurora moved in their bankruptcy case for relief from the automatic stay, Debtors should have amended their Schedules to disclose the existence of Plaintiff's claim for rescission. The Court finds merit in this argument. When Aurora filed its motion for relief, Aurora made clear in its motion that the reason it desired relief from the stay was to proceed with, or institute, foreclosure proceedings on the mortgaged premises. Accordingly, when this Court granted Aurora relief from the stay to proceed with a foreclosure proceeding, Debtors possessed a potential claim for rescission against Defendants. Admittedly, the claim was not yet triggered under §1635(i)(2) because Defendants had not instituted their foreclosure proceeding on the mortgaged property,[6] but the existence of the claim was reasonably foreseeable. Had Debtors amended their Schedules at that time to set forth the potential claim for rescission as they were required to do, *see Krystal Cadillac-Oldsmobile GMC*

---

[6] A motion for relief from the stay to pursue foreclosure proceedings is an act separate and distinct from the initiation of foreclosure proceedings. This distinction was recognized by the bankruptcy court in *Chabot v. Washington Mutual Bank (In re Chabot),* 369 B.R. 1 (Bankr. D. Mont. 2007), which opined:

> Chabot argues that WaMu's motion to lift automatic stay was part of its institution of foreclosure proceedings, but the Court disagrees. WaMu's foreclosure proceedings were subject to the automatic stay, and WaMu filed its motion for relief from the stay, properly, in order to avoid committing a violation of the stay. A motion to modify or terminate the automatic stay is a core bankruptcy proceeding, wholly separate and distinct from WaMu's foreclosure proceedings. By itself, modification or termination of the stay does not advance WaMu's foreclosure proceedings at all. WaMu might proceed with its foreclosure remedies after obtaining relief from the stay or it may elect to do nothing, or it may reach a settlement or other resolution with the Debtor. WaMu's motion to modify stay filed pursuant to a specific provision of the Bankruptcy Code, 11 U.S.C. § 362(d), is not in any respect part of WaMu's process of seeking non-judicial foreclosure proceedings.

*Id*. at 318.

*Truck, Inc. V. Gen. Motors Corp.*, 337 F.3d at 322 (emphasis in original) ("The Code requires that a debtor list *potential* causes of action, not claims it actually intends to sue on at the time of the required disclosure."), the Chapter 7 Trustee would have had the opportunity to evaluate its effect, if any, on her determination that there were "no assets to administer for the benefit of creditors of this estate." Consequently, the Court does conclude that Plaintiff, by commencing this adversary proceeding to pursue her TILA claim after failing to amend Debtors' Schedules to list her potential rescission claim, has taken two positions that arguably are "irreconcilably inconsistent."[7]

---

[7] Aurora also argued at the hearing on its motion to dismiss that because Plaintiff failed to defend against its motion for relief from the stay by raising her TILA claim, she is legally barred from pursuing her claim under the doctrine of res judicata. However, res judicata only applies "when three basic circumstances exist." *Fox v. Congress Financial Corporation (In re Target Industries, Inc.),* 328 B.R. 99, 115 (Bankr. N.J. 2005) (*quoting Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)). These circumstances are the following: (1) a final judgment exists on the merits in a prior suit involving; (ii) the same parties or their privities; and (iii) a subsequent suit based on the same cause of action. *Id.* Assuming, as the Court must for purposes of deciding a motion to dismiss, that Plaintiff is correct that her TILA claim was not triggered until the tolerance range was decreased pursuant to §1635(i)(2), Plaintiff did not have a TILA claim to assert when Aurora filed its motion for relief from the stay. No claim existed pursuant to §1635(i)(2) until Aurora was granted relief from the stay and it instituted foreclosure proceedings against the mortgaged property. Indeed, even the Chapter 7 Trustee could not have filed a claim against Defendants under §1635(i)(2) until Aurora was granted relief from the stay and it instituted a foreclosure action against the mortgaged property. As such, a judgment on the merits of Plaintiff's TILA claim simply could not have occurred in the context of Aurora's motion for relief from the stay.

11

**Whether Plaintiff's change of position was in "bad faith" or was
coupled with the intent of playing "fast and loose" with the Court?**

At this point in this adversary proceeding, the only evidence before the Court bearing in any way upon Plaintiff's intent vis-a-vis her change of position with regard to her TILA claim is the following: Debtors indicated in their Schedules when they filed their bankruptcy case that they intended to continue making their mortgage payments; when Debtors filed for bankruptcy, they were current on their mortgage; Debtors subsequently defaulted on their mortgage; Aurora sought and was granted relief from the stay to institute foreclosure proceedings; Debtors did not amend their Schedules to disclose their potential rescission claim; and after Aurora instituted foreclosure proceedings, Plaintiff commenced her TILA action in federal court based on 15 U.S.C. §1635(i)(2). This evidence is insufficient to convince the Court that Debtors knew about, or were aware of, the rescission claim during their bankruptcy case.[8] Consequently, it is impossible to ascertain on this record whether Plaintiff's change in position was made in "bad faith" or coupled with the intent of playing "fast and loose" with the Court. Therefore, Aurora's motion to dismiss the complaint shall be denied.

**Summary**

Aurora has failed to establish that Plaintiff is legally barred from pursuing her TILA claim based on the doctrine of judicial estoppel. Consequently, its motion to dismiss shall be denied. However, the denial shall be without prejudice and Aurora may raise its argument again, but in doing so it must provide the Court with additional evidence bearing on: (1) whether

---

[8] The Third Circuit has held that "a rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and motive to conceal that claim in the face of an affirmative duty to disclose." *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d at 321. Because the pleadings in the instant case fail to demonstrate that Debtors had knowledge of Plaintiff's rescission claim or that they had a motive to conceal the claim in the face of their affirmative duty to disclose it, no "rebuttable inference of bad faith" applies.

$279.13 is within the tolerance range set forth in 15 U.S.C. § 1605(f)(2); and (2) whether the Debtors' failure to list their rescission claim on their Schedules and Plaintiff's subsequent commencement of her TILA action was done in "bad faith" or for the purpose of playing "fast and loose" with the Court.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>April 16, 2009</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 7 |
| | : |
| WILLIAM J. and DENISE M. STOUT, | : |
| | : |
| DEBTORS | : BANKRUPTCY NO. 07-14899 SR |
| | : |
| DENISE M. STOUT, | : |
| | : |
| PLAINTIFF, | : |
| VS. | : |
| | : |
| AURORA LOAN SERVICES AND LEHMAN BROTHERS BANK, | : |
| | : |
| DEFENDANTS, | : ADV. NO. 09-00011 SR |

# ORDER

**AND NOW,** upon consideration of the Amended Motion to Dismiss Complaint seeking Damages in Core Adversary Proceeding (the "Motion") and Plaintiff's response thereto and after a hearing with notice, it is hereby **ORDERED** that the Motion is **DENIED WITHOUT PREJUDICE.**

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: April 16, 2009

<u>Counsel for Plaintiff/Debtor</u>:
STEPHEN GREG DOHERTY
Bennett and Doherty, P.C.
1456 Ferry Road
Suite 603
Doylestown, PA 18901

<u>Counsel for Defendant</u>:
Peter J. Mulcahy, Esquire
Phelan Hallinan & Schmieg
1617 JFK Blvd
Suite 1400
Philadelphia PA 19107

George Conway, Esquire
Office of the United States Trustee
833 Chestnut Street
Suite 500
Philadelphia PA 19106

Nancy Mulvehill, Courtroom Deputy to Judge Raslavich